NORTHLAND EQUITIES, INC.,
Plaintiff,

v.

GATEWAY CENTER CORPORATION, Matthew B. Weinstein, Herbert A. Fogel, Richard L. Klaus, Rosemont Construction Company, First Pennsylvania Banking and Trust Company, Provident National Bank, Obermayer, Maxwell, Rebmann & Hippel, Esqs., Nowicki & Polillo, a partnership, University City Science Center, Wolf, Block, Schorr & Solis-Cohen, Esqs., Randall Whaley, Robert L. Kunzig, Arthur F. Sampson, Hart T. Mankin, Hugh Brister, Paul Cupp, Gustave Amsterdam, Isadore M. Scott, Bruce M. Baldwin, Clarence Dockens, Fred T. Corletto and Damon Childs, Defendants.

Civ. A. No. 76–1730.

United States District Court,
E. D. Pennsylvania.

Nov. 29, 1977.

John Rogers Carroll, Philadelphia, Pa., for plaintiff.

Bernard G. Segal, George P. Williams, III, Lawrence T. Hoyle, Jr., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for the Gateway defendants.

Robert W. Sayre, Thomas J. Elliott, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for First Pennsylvania Banking and Trust Co.

Arthur, Makadon, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Provident Nat. Bank.

Thomas N. O'Neill, Jr., James W. Gould, Montgomery, McCracken, Walker & Rhoads, for Obermayer, Maxwell, Rebmann and Hippel.

Arsen Kashkashian, Jr., Newtown, Pa., for Nowick and Polillo, a partnership.

Henry W. Sawyer, III, David P. Bruton, Drinker Biddle & Reath, Philadelphia, Pa., for University City Science Center, Randall Whaley, Paul Cupp, Gustave Amsterdam and Isadore M. Scott.

John G. Harkins, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Wolf, Block, Schorr and Solis-Cohen.

Rex E. Lee, Asst. Atty. Gen., David J. Anderson, Alexis Panagakos, Dept. of Justice, Washington, D. C., for Federal defendants.

Timothy J. Savage, Philadelphia, Pa., for Bruce M. Baldwin.

Stephen T. Saltz, James M. Moran, Deputy City Solicitors, Philadelphia, Pa., and Richard D. Malmed, Philadelphia, Pa., for Clarence Dockens and Damon Childs.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT FOR DEFENDANTS

MEHRTENS, Senior District Judge.

Motion for Summary Judgment has been filed by the defendants on all issues in this case. As to three issues—(1) the procurement statutes claims, (2) the general antitrust claims and (3) the claim for lost profits—summary judgment is granted. As to the remaining issues, summary judgment is denied.

On September 30, 1970, the General Services Administration issued a written Solicitation for Offers, No. Neg (70)–63, seeking offers to supply office space for certain socio-economic agencies at a single location in Philadelphia. A total of five bidders responded to the solicitation, which contained five specified conditions. Three of the five offers were deemed responsive: Plaintiff's, Defendant Gateway Center Corporation's and that of John Merriam. On February 18, 1971, the award was made to defendant Gateway.

Plaintiff filed this action alleging, *inter alia*, that defendant Gateway received the government lease under circumstances violating certain federal statutes and regulations relating to the federal procurement process. 41 U.S.C. § 253; 41 U.S.C. § 11, P.L. No. 91–556, 84 Stat. 1442; P.L. No. 92–313, 40 U.S.C. § 606; 41 C.F.R. § 1–1.-403; 4 C.F.R. § 20.1–.12; and the Antitrust Laws of the United States. (Because the procurement was to be "negotiated," 41 U.S.C. § 252(c)(10) is the proper procurement statute involved, rather than 41 U.S.C. § 253 cited by plaintiff, which applies to advertised bids.)

### The Procurement Statutes Claims

Claiming to have been damaged by the award of the lease to Gateway, the plaintiff, an unsuccessful bidder, asserts a purported federal cause of action for recovery of damages and lost profits under the procurement provisions. Plaintiff's effort appears to be unique. There are cases under other theories of action (*e. g.* implied contract theory) in which standing to bring suit has been allowed. *See Keco Industries Inc. v. United States*, 428 F.2d 1233, 192 Ct.Cl. 773 (1970). There are, however, no reported cases under the instant circumstances.

■ Defendants assert, and this court finds, that the federal procurement statutes and regulations, while providing several other remedies, do not confer a private cause of action for damages. Neither the statutes nor the regulations grant an unsuccessful bidder a statutory cause of action to recover potential lost profits or other damages. In deciding if such a remedy is to be implied, looking to those situations in which private actions have been allowed is helpful—securities protection for investors and actions against narcotic agents based on the Fourth Amendment. Applying the standards for implying a private action in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), *infra*, and considering the circumstances in the past allowances of private remedies, it appears that congressional policy would not support the damage action in this case.

This case presents a two-fold problem—whether plaintiff has *standing* in the Article III sense; and whether plaintiff has a substantial *legal claim* cognizable in a federal court.

■ It is not sufficient to merely hold, for example, that the plaintiff has standing to sue, because that holding may, in effect, say only that plaintiff has in fact been injured by the defendant. Rather, the court must at some point, if the result is to conform to the tests fashioned by the Supreme Court (*See Association of Data Pro-*

*cessing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)), also hold that the plaintiff is protected by the statutes in question, as illuminated by their legislative history, and that the statutes permit plaintiff to seek damages. Plaintiff must demonstrate that it has a cause of action to redress such injury—a right, enforceable in the federal courts, to collect damages. (*See Merriam v. Kunzig*, 476 F.2d 1233 (3rd Cir.) *cert. denied*, 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973) Adams, J., dissenting).

In *Merriam, supra,* a case involving another losing bidder in this same controversy, the Third Circuit Court of Appeals held that an unsuccessful bidder had "standing" to seek *judicial review* of a government contract award. (The court combined its discussion of standing and whether plaintiff had a legal claim under the general heading of "standing.") In reaching this conclusion, the court applied the standing test developed under the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.,* for review of agency action. This test is applicable when a plaintiff seeks review of administrative action, not when relief is sought against private persons, or even quasi-public corporations. *Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers,* 414 U.S. 453, 455–56, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). The standards for creation of an implied damage remedy are more stringent than the test applied in *Merriam, supra,* for standing to challenge administrative action.

In *Cort v. Ash, supra,* the Supreme Court applied the following four-part test in determining whether a private remedy is implicit in a statute not expressly providing one:

1. Is the plaintiff one of the class for whose "especial" benefit the statute was enacted?

2. Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

3. Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy?

4. Is the cause of action one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law?

The procurement statutes were not created for the "especial" benefit of bidders. In *Cort,* a shareholder's derivative suit, plaintiff sought to state a private claim for relief under 18 U.S.C. § 610, which prohibits corporations from making contributions or expenditures in connection with specified federal elections. In holding that the private cause of action could not be implied under the statute, the court identified two considerations which had motivated Congress in passing the legislation in issue, the first being the protection of the corporate elective process and the second being the protection of the shareholders from losses through contributions they had not authorized.

The stockholder had relied on the second rationale in asserting an implied stockholder action, but the protection of stockholders was "at best a secondary concern." (*Id.,* 422 U.S. at 81, 95 S.Ct. 2080). Thus, the statute differed from other criminal statutes in which private causes of action have been inferred because of a clearly articulated federal right in the plaintiff, *e. g. Bivens v. Six Unknown Federal Narcotic Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619, or a pervasive legislative scheme governing the relationship between the plaintiff class and the defendant class in a particular regard, *e. g. J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (private enforcement of securities proxy rules).

Although in *Merriam, supra,* the court recognized a protected zone of interest of bidders within the procurement statutes (*But See* : *Merriam, supra,* at 1249, Adams, J., dissenting), it appears that this interest is secondary to the government's interest in economical procurement. The Federal Property Administrative Services Act of 1949, 63 Stat. 378 *et seq.* (1949), of which 41 U.S.C. § 253 (Advertising Requirements) is a part, contains a section entitled "Congressional Declaration of Policy." It states that:

"It is the intent of the Congress in enacting this legislation to provide for the Government an economical and efficient system [for procurement]." 40 U.S.C. § 471 (1970).

In Public Law 91–129, 83 Stat. 269, as amended by Pub.L. 92–47, 85 Stat. 102, Congress, in creating the Commission on Government Procurement, declared it "to be the policy of Congress to promote economy, efficiency and effectiveness in the procurement of goods, services, and facilities by and for the executive branch of the Federal Government," and outlined 12 general means of achieving this policy, including number 11: "fair dealing and equitable relationships among the parties in Government contracting [should be promoted]."

As shown by legislative history, any purpose of protecting bidders is secondary, and is certainly not comparable to, for instance, the announced governmental policy of protecting securities investors. Further analogy can be made to the rejection of claims of unsuccessful bidders under the Small Business Act (SBA). In *Savini Construction Co. v. Crooks Brothers Construction Co.*, 540 F.2d 1355 (9th Cir. 1974), the court denied a private right of action because it would frustrate congressional intent in having government projects performed in a timely and competent manner, and would deter successful bidders from performing for fear of later being held liable to another party for their potential profits.

The rejection of SBA claims, despite a clear congressional expression of concern for the welfare of small businesses, strongly suggests the impropriety of creating a private action for damages under the procurement laws. By deterring unsuccessful bidders from acting at an early date to overturn an award, such a policy would similarly frustrate existing enforcement mechanisms under the procurement statutes. Presently, an unsuccessful offeror has several available methods by which he can challenge an award which he believes was improperly made. He can file a protest with the contracting officer who is required to consider all protests submitted before or after an award is made (41 C.F.R. §§ 1–2.-407–8); he can file a protest with the General Accounting Office (GAO), where the Comptroller General must investigate the award and issue a report affirming or voiding the award (4 C.F.R. §§ 20.0–.10); and finally, he can seek judicial review of the award and injunctive relief in federal court. (*See Merriam v. Kunzig, supra.*)

Plaintiff did not seek to invoke these remedies. Merriam, the other losing bidder, did so. The day after the award of the contract to defendant Gateway, Merriam protested to the GAO. He also later filed suit to rescind the contract in district court. The GAO made findings that the Gateway offer failed to comply with two of the five specifications for bids, and that the General Services Administration had failed to make a reasonable attempt to verify whether Gateway had satisfied them.

In *Merriam v. Kunzig*, 347 F.Supp. 713 (E.D.Pa.1972), the district court found that Merriam did not have standing to bring the suit for judicial review of the award. The Third Circuit later overturned that decision (476 F.2d 1233), but before there was a trial on the merits Merriam and the core defendants in this case settled.

Now, years after the 1971 award to Gateway, plaintiff seeks lost profits, bid costs and punitive damages. While this court by no means wishes to condone possible fraud, neither does it want to encourage possibly speculative plaintiffs to wait until a building is constructed and inhabited before attacking the propriety of the initial award. This would wreak havoc on procurement. In order to be compatible with statutory goals, a remedial scheme must guarantee that the bidder will act at a time when the proper bidder can still be selected. By telling the unsuccessful bidder that he may wait until after his competitor has performed and then sue to recover possible lost profits, the courts would provide an irresistible disincentive to his coming forth at an earlier time. Any award goes into the private pocket of the unsuccessful bidder, not into the public treasury, even though the government suffers by not having procured the most advantageous bid.

It is judicious to consider not only the ill effect on procurement, but also the strain on the effectiveness of the already burgeoning federal court system, before ascribing to Congress the intention to open up a new right of private action. Having thoroughly considered this issue, this court finds that a private cause of action for damages and lost profits under the procurement statutes cannot be implied.

### The General Antitrust Claim

The complaint alleges that the cause of action arises, *inter alia*, under "the Antitrust Laws of the United States." The mere reference to the antitrust laws without any hint of the basis of the claim is insufficient under FRCP 8(a), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Even though Rule 8 only requires "notice pleading," this complaint does not comply, as it does not give fair notice of what the plaintiff's claim is, and the grounds upon which it rests.

Even if the complaint had stated a cause of action under the antitrust laws, the action is barred by the statute of limitations. Basically, damages are recoverable under the federal antitrust acts only if suit is commenced within four years after the cause of action has accrued. 15 U.S.C. § 15b. A civil cause of action under § 15 arises at the time the plaintiff's interest is invaded to his damage, and the statute of limitations begins to run at that time. *Suckow Borax Mines Consolidated v. Borax Consolidated*, 185 F.2d 196 (9th Cir. 1950) *cert. denied*, 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680, *rehearing denied* 341 U.S. 912, 71 S.Ct. 620, 95 L.Ed. 1349.

In its pre-trial memorandum, plaintiff states, "The defendants conspired to defraud plaintiff of certain rights with respect to the solicitation, bid and ultimate award, the latter of which was eventually made to the defendant, Gateway Center Corporation." The ultimate damage ensuing from the defendants' alleged antitrust violations, and the crux of this lawsuit, was the award of the leasehold to Gateway, and the resulting denial of the award to the plaintiff. That denial—dated February 18, 1971—occurred more than four years before the initiation of this suit on June 1, 1976. No tolling of the statute is alleged. Indeed, as plaintiff stated in its reply to defendants' Joint Memorandum in Support of Affirmative Defenses, "It is true as defendants say, that we do not allege fraudulent concealment of the accrual of the cause of action. It was indeed well known."

Therefore, as to the general allegation of violation of the antitrust laws, as opposed to conspiracy, even if a cause of action had been stated, plaintiff's action is barred by the statute of limitations.

### Claim for Lost Profits

Plaintiff's claim includes a common law demand for lost profits caused by deprivation of the lease.

It would be improper to award plaintiff lost profits because the contract under which plaintiff arguably would have made such profits never actually came into existence. The solicitation by GSA was for leasehold offers which it could accept or reject as it pleased. No contract resulted until an offer was accepted. Hence, an unsuccessful bidder cannot recover the profit he would have made out of the contract, because he had no contract. *Heyer Products Company v. United States*, 140 F.Supp. 409, 135 Ct.Cl. 63 (1956).

Furthermore, it is not certain that, had Gateway's bid been rejected, the award would have been made to plaintiff, even as low bidder. 10 U.S.C. § 2305(c) provides in pertinent part: ". . . Awards shall be made . . . to the responsible bidder whose bid conforms to the invitation and will be the most advantageous to the United States, *price and other factors considered*. However, all bids may be rejected if the head of the agency determines that rejection is in the public interest." (emphasis added) *See Keco Industries, Inc., supra*, 428 F.2d at 1240.

Pure speculation being the basis of the claim for lost profits, plaintiff fails to state a common law claim for which relief may be granted.

In light of the foregoing, the Court, being fully advised in the premises, finds there to be no genuine issue of material fact and the defendants are entitled to judgment as a matter of law on the issues of the procurement statutes claim, the general antitrust claim and the claim for lost profits. It is, therefore,

ORDERED and ADJUDGED that defendants' Motion for Summary Judgment be and the same hereby is GRANTED, and Summary Judgment is hereby entered in favor of defendants as to the three issues stated above. As to all other claims, defendants' motion is hereby DENIED.

DONE and ORDERED at Miami, Florida, this 29th day of November, 1977.