848 P.2d 1123 (1993)
115 N.M.App. 196
STATE ex rel. EDUCATIONAL ASSESSMENTS SYSTEMS, INC., Plaintiff-Appellant,
v.
COOPERATIVE EDUCATIONAL SERVICES OF NEW MEXICO, INC., Defendant-Appellee.
EDUCATIONAL ASSESSMENTS SYSTEMS, INC., A New Mexico Corporation, Plaintiff-Appellant,
v.
Max LUFT, individually and Cooperative Educational Services of New Mexico, Inc., a New Mexico non-profit corporation, Defendants-Appellees.
No. 11143.
Court of Appeals of New Mexico.
February 17, 1993.
Martin E. Threet, Robert G. Kavanagh, Kevin H. Kartchner, Threet & King, Albuquerque, for plaintiff-appellant.
Marshall G. Martin, Hinkle, Cox, Eaton, Coffield & Hensley, Albuquerque, for defendant-appellee Max Luft.
Dan A. McKinnon, III, Marron, McKinnon & Ewing, Albuquerque, for defendant-appellee Co-op. Educational Services.

OPINION
FLORES, Judge.
Educational Assessments Systems, Inc. (EASI) appeals from a decision by the district court dismissing with prejudice its petition for a writ of quo warranto, as well as its related complaint for damages, both of which raise questions under the Procurement *1124 Code, NMSA 1978, §§ 13-1-28 to -199 (Supp. 1984). On appeal, EASI contends that the district court erred (1) in determining that the Procurement Code contained applicable exemptions, (2) that, in any event, the Code contains an adequate legal remedy but does not authorize a private cause of action, and (3) on these facts neither Cooperative Educational Services of New Mexico, Inc. (CES) nor Max Luft (Luft), Chief Executive Director of CES, were liable to EASI for actions in restraint of trade or civil rights violations.

BACKGROUND
In 1979, CES was formed as a New Mexico nonprofit corporation by several public school districts for the primary purpose of procuring and delivering educational services to the school district members at a reduced cost. In 1984, approximately thirty school districts joined forces and entered into a joint powers agreement (JPA) pursuant to the provisions of the Joint Powers Agreements Act, NMSA 1978, Sections 11-1-1 to -7 (Repl.Pamp. 1983). The objective was to establish an educational cooperative which would pool their efforts and resources in order to procure services for the respective school districts at an affordable cost. The member school districts comprising the cooperative designated CES as the administering agency of the cooperative. Each superintendent of the various member school districts served on the board of directors of CES. The JPA provided that all purchases by the cooperative would be upon the direction of the board of directors of CES and had to be in accordance with the requirements of the Procurement Code.
Subsequent to its formation, one of CES's primary activities was the delivery of ancillary or special education services to member school districts. In 1985, CES, an administering agency of the cooperative, issued a request for proposal (RFP) for ancillary services. EASI protested, claiming that (1) the RFP was too burdensome because the requested background information concerning the personnel who were to provide the services was difficult to obtain, and (2) automobile insurance naming CES as a co-insured could not be obtained. CES denied EASI's protest. Following a hearing before the cooperative's board of directors, EASI's appeal was also denied. EASI was advised at that time of its right to seek judicial review of that decision, pursuant to Section 13-1-183. EASI failed to seek such judicial review under Section 13-1-183, but rather initiated the present action.
This case initially began as two separate, but related, lawsuits. In the first suit, EASI petitioned the district court for a writ of quo warranto, for temporary restraint, and for injunctive relief. EASI requested the district court to direct CES to show cause regarding CES's authority to act as the administering agency of a JPA and further requested the court to: (1) issue a temporary restraining order to prevent the officers and directors of CES from issuing a response to the RFP issued by the school districts that form the JPA, who, in turn, sought submission of proposals to provide the JPA with management services; (2) permanently enjoin the officers and directors of CES from issuing a proposal at any time in response to the RFP; and (3) enjoin the directors of CES from causing the JPA to approve any proposal submitted by CES until the provisions of the Procurement Code had been met and until a meaningful competitive atmosphere could be achieved. The district court denied EASI's request for a temporary or preliminary injunction for the reason that EASI had failed to show that irreparable harm would result.
In the second suit, EASI filed a complaint for damages based on restraint of trade and deprivation of civil rights against Luft, individually, and against CES.
Upon EASI's motion, the district court ordered consolidation of the two cases. However, prior to consolidation, CES moved for summary judgment in the first lawsuit, arguing (1) that the issues were moot since CES had been dissolved and no longer acted as the administering agency under the JPA; and (2) that an adequate remedy at law existed under Section 13-1-172, therefore negating EASI's need for injunctive relief or a writ of quo warranto. The district court granted CES's motion for summary judgment, in part, stating that *1125 the Joint Powers Agreements Act does not prohibit a private corporation from serving as an administering agency. Thereafter, EASI's motion for partial summary judgment on the issue of the liability of CES and Luft, based on restraint of trade and deprivation of civil rights, was denied.
Following a trial on the merits, and after filing amended findings of fact and conclusions of law, the district court entered a judgment dismissing both complaints with prejudice. EASI appeals from this judgment and raises several issues which we have consolidated into the following: (1) whether the district court erred in concluding that the Procurement Code contains relevant exemptions, and thus was not violated as EASI claims; (2) whether the district court erred in concluding that the Procurement Code provides the sole remedy for violations thereof; and (3) and (4) whether the district court erred in concluding that CES and Luft were not liable to EASI for restraint of trade or civil rights violations. We affirm.

DISCUSSION

I. Applicability of the Procurement Code

On appeal, EASI argues that the district court erred in concluding that CES and Luft did not violate the Procurement Code. Specifically, the district court concluded that a cooperative formed pursuant to the provisions of the Joint Powers Agreements Act is not required to comply with the provisions of the Procurement Code. The district court also concluded that the Procurement Code exempts cooperative procurement and that, as the administering agency of the cooperative, CES was likewise immunized from the requirements of the Procurement Code. Finally, the court concluded that "CES did not act in violation of the Procurement Code, or it at least substantially complied with its provisions." EASI contends that the district court erred in concluding that a cooperative procurement agreement among local public bodies exempts those bodies from the competitive proposal procedure mandated by the Procurement Code. EASI also contends that the district court erred in concluding that CES did not act in violation of the Procurement Code.
The Procurement Code, which became effective on November 1, 1984, applies to all expenditures by state agencies and local public bodies for the procurement of items of tangible personal property, services, and construction, unless the Procurement Code provides otherwise. Section 13-1-30. An educational institution is included within the definition of a state agency. Section 13-1-90. Local public bodies encompass "every political subdivision of the state and the agencies, instrumentalities and institutions thereof." Section 13-1-67. Both EASI and CES agree that the parties to the joint powers agreement are local public bodies. Thus, as local public bodies, school districts are generally subject to the provisions of the Procurement Code. Under the Joint Powers Agreements Act, a joint agency can exercise the powers of any of its member agencies "subject to any of the restrictions imposed upon the manner of exercising such power of one of the contracting public agencies." Section 11-1-5(C). Here, since the member school districts are subject to the Procurement Code, CES, as the joint agency, must also comply with the Procurement Code.
Next, we address CES's contention that pursuant to Section 13-1-98(A), cooperative procurement by CES was specifically exempt from the requirements of the Procurement Code. Because this Court determines there was a typographical error in the language of Section 13-1-98(A), we review this section as enacted, codified, and amended.
As published in 1984, Section 13-1-98(A) stated that the procurement of personal property or services by a state agency or a local public body from a state agency, a local public body or external procurement unit is specifically exempted from the Procurement Code, "except as otherwise provided in Sections 106 through 108 [13-1-133 to 13-1-135 NMSA 1978] of the Procurement Code." Both parties, at the request of this Court, filed supplemental briefs following oral argument addressing whether the exception provided in Section 13-1-98(A), correctly pertained to Sections 13-1-133 to -135, as stated in the Procurement *1126 Code when published in 1984, or whether the exception should have originally referred to Sections 13-1-135 to -137.
In its supplemental brief, CES states that, other than session laws and compiler's notes, there is no legislative history in New Mexico and no indication why the legislature amended Section 13-1-98(A) in 1987, when the phrase "Sections 13-1-135 through 13-1-137 NMSA 1978" was substituted for the phrase "Sections 106 through 108 [13-1-133 to 13-1-135 NMSA 1978] of the Procurement Code." However, CES contends Section 13-1-98(A) can be reasonably construed to exempt purchases from a local public body, such as CES, created by an approved JPA. Additionally, CES notes the lack of statutory authority which would make the Joint Powers Agreements Act subject to the Procurement Code. In conclusion, CES states that it was exempt from the operation of the Procurement Code when it made purchases for the cooperative and that in spite of this, CES did comply with the Procurement Code by issuing a RFP.
EASI, on the other hand, contends that Section 13-1-98(A) contained an error as it was originally published in 1984. EASI submits that the error occurred as a result of the renumbering of sections which took place between the time the house bill was passed in 1984 as House Bill 237 and the time when the section was published as part of the Procurement Code in the 1984 supplemental pamphlet. The enumerated exceptions to the Procurement Code were originally drafted by the legislature in Section 72 of House Bill 237. With only minor changes, not relevant to this discussion, Section 72 of House Bill 237 was formally enacted as 1984 N.M. Laws, chapter 65, Section 71. When initially drafted, Section 72(A) of House Bill 237 exempted the procurement of "personal property or services by a state agency or a local public body from a state agency, a local public body or external procurement unit except as otherwise provided in Sections 108 through 110 of the Procurement Code." N.M. House Bill 237, § 72(A) (emphasis added). At the time the house bill was passed, Sections 108 through 110 were, in all relevant parts, identical to Sections 13-1-135 through -137. However, when Section 72(A) of House Bill 237 was included in the session laws (1984 N.M. Laws, ch. 65, Section 71), Section 72 was renumbered as Section 71 and it provided that the provisions of the Procurement Code did not apply "except as otherwise provided in Sections 106 through 108 of the Procurement Code." 1984 N.M. Laws, ch. 65, § 71(A) (emphasis added). Likewise, when the session laws were codified in the 1984 supplement, the applicable section, namely, Section 13-1-98(A), also provided that the provisions of the Procurement Code did not apply "except as otherwise provided in Sections 106 through 108 [13-1-133 to 13-1-135 NMSA 1978] of the Procurement Code." Section 13-1-98(A). EASI contends that Section 13-1-98(A), as originally codified, must be erroneous because it makes no sense to group Sections 13-1-133 and 13-1-134 with Section 13-1-135, whereas Section 13-1-135 is naturally read in conjunction with Sections 13-1-136 and 13-1-137. Additionally, Section 13-1-98(A) was amended in 1987 and "Sections 13-1-135 through 13-1-137" was substituted for "Sections ... 13-1-133 to 13-1-135" of the Procurement Code. EASI argues that this tends to indicate that the legislature realized their error and corrected it. In conclusion, EASI urges this Court to construe the law in accordance with the obvious intent of the legislature.
We agree with EASI that in construing the meaning of the exception, we should determine and give effect to the intent of the legislature. See Security Escrow Corp. v. State Taxation & Revenue Dep't, 107 N.M. 540, 760 P.2d 1306 (Ct.App. 1988). Clearly, the language "Sections ... 13-1-133 to 13-1-135" found in Section 13-1-98(A) was a typographical error and should be read "Sections 13-1-135 to 13-1-137." See New Mexico Glycerin Co. v. Gallegos, 48 N.M. 65, 145 P.2d 995 (1944) (the court determined that the word "or" within the statute was patently a typographical error and should be read "of"). Section 13-1-135 provides that state agencies and local public bodies may enter into agreements pursuant to the Joint Powers Agreements Act for the procurement of *1127 services, construction, or tangible personal property and also permits central purchasing offices to enter into cooperative agreements with the state purchasing agent. Section 13-1-136 requires reporting of cooperative procurement agreements entered into between state agencies and local public bodies or external procurement units. Section 13-1-137 permits agreements providing for a state agency or local public body to sell property to, acquire property from or cooperatively use tangible personal property or services belonging to another state agency, local public body, or external procurement unit. Thus, as we understand Section 13-1-98(A), it provides that a state agency or local public body may procure tangible personal property or services from a state agency, local public body, or external procurement unit without needing to comply with any of the provisions of the Procurement Code except the requirements of Sections 13-1-135, -136, and -137. As previously noted, the term "local public body" includes "the agencies, instrumentalities and institutions" of every political subdivision of the state. Section 13-1-67; see § 11-1-3 (joint agency may "exercise any power common to the contracting parties"). Thus, when a local public body acquires property or services from a joint agency, the acquisition is not subject to any provisions of the Procurement Code except those set forth in Sections 13-1-135, -136, and -137. On the other hand, Section 13-1-98(A) does not exempt the procurement of goods or services by the joint agency from an outsider. Thus, the acquisition of the services of CES by the joint agency was not exempt from the provisions of the Procurement Code. This interpretation makes sense in that the joint agency must comply with the provisions of the Code in acquiring goods and services, but the contracting parties in the Joint Powers Agreement may then acquire the goods and services from the joint agency without going through the bidding requirements, etc., of the Procurement Code. We now proceed to determine EASI's remedy under the Procurement Code.

II. Remedy Under Procurement Code

EASI argues that the district court erred in concluding that the Procurement Code provides the sole remedy for violations thereof. EASI maintains that the Procurement Code fails to expressly state that the remedies provided therein are exclusive and that such exclusivity should not be inferred. CES contends, and the district court concluded, that the Procurement Code does not expressly or impliedly authorize any private right of action for disappointed offerors such as EASI, since Section 13-1-183 provides an adequate legal remedy. Section 13-1-183 states, in pertinent part:
A. All actions authorized by the Procurement Code .. . for judicial review of a determination shall be based upon the records of the central purchasing office and all evidence submitted by the protestant and other interested parties. All actions for judicial review must be filed within thirty days of receipt of notice of the determination... .
B. All determinations under the Procurement Code made by a state agency or a local public body shall be sustained unless arbitrary, capricious, contrary to law, clearly erroneous or not based upon substantial evidence.
CES argues that its position, to the effect that there is no private right of action under the Procurement Code, is consistent with federal procurement cases which hold that no private right of action exists or will be implied under federal law. We agree.
Under federal law, remedies are provided for disappointed bidders. Pursuant to the Bid Protest Regulations, 4 C.F.R. §§ 21.0 to -.12 (1991), a disappointed bidder may seek administrative relief by filing a protest with the General Accounting Office (GAO). 4 C.F.R. § 21.1. Additionally, a disappointed bidder may request reconsideration of the GAO's decision. 4 C.F.R. § 21.12. Further, the Administrative Procedure Act, 5 U.S.C. § 701-06 (1989), provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant *1128 statute, is entitled to judicial review thereof." 5 U.S.C. § 702.
Analogy can be made to the cases in which the federal courts have declined to recognize an express or implied private right of action by the disappointed bidder under federal statutes and regulations. In Northland Equities, Inc. v. Gateway Center Corp., 441 F. Supp. 259 (E.D.Pa. 1977), the unsuccessful bidder of a government lease sued the successful bidder on a federal cause of action for recovery of damages and lost profits for various violations of the federal procurement statutes. The appellate court held that neither federal statutes nor regulations, while providing several other remedies, provide a disappointed bidder a statutory cause of action to recover either damages or lost profits from the successful bidder. Id. at 261. The court stated that there was no implicit damage remedy in the federal procurement statutes and that the federal procurement statutes were not created for the primary benefit of bidders, but rather were created to protect the government's interest in economical procurement. Id. at 262; see also Tectonics, Inc. v. Castle Constr. Co., 753 F.2d 957 (11th Cir.1985) (in discussing the Small Business Act, the court held that Congress did not intend to provide a civil private cause of action to disappointed bidders); Savini Constr. Co. v. Crooks Bros. Constr. Co., 540 F.2d 1355 (9th Cir.1974) (in discussing the Small Business Act, the court held that it did not create an express cause of action by the disappointed bidder against a successful bidder); John C. Holland Enters., Inc. v. J.P. Mascaro & Sons, Inc., 653 F. Supp. 1242 (E.D.Va. 1987) (in discussing the Small Business Act, the court stated that it did not create either an express or implied right of action by the disappointed bidder against the successful bidder). At least one other court has interpreted a state procurement code to hold that the disappointed bidder cannot maintain a private cause of action against a successful bidder. See Ohio River Conversions, Inc. v. City of Owensboro, 663 S.W.2d 759 (Ky. Ct. App. 1984).
Additionally, CES argues that the purpose of the Procurement Code is to benefit the citizens and that "benefitting the citizens" means having an efficient procurement system. In discussing the federal procurement statutes, the court in Northland Equities stated that "[t]he procurement statutes were not created for the `especial' benefit of bidders" but rather for the governmental interest in an economical and efficient system of procurement. Northland Equities, 441 F. Supp. at 262-63; see also Ohio River Conversions, 663 S.W.2d at 760 ("Competitive bidding statutes are primarily intended for the benefit of the public rather than for the benefit or enrichment of bidders, and consideration of advantages or disadvantages to bidders must be secondary to the general welfare of the public" (quoting 72 C.J.S.Supp. Public Contracts § 8 (1975))). CES contends that the system is not efficient if a disappointed bidder can wait until after the performance to sue in order to recover lost profits. See Northland Equities, 441 F. Supp. at 263. Further, the creation of additional causes of action in addition to the prescribed remedies under the procurement statutes may discourage disappointed bidders from seeking prompt judicial and administrative review of contract awards, create litigation in government procurement, increase the cost of conducting business with the government, and deter potential bidders from participating in government procurement. John C. Holland Enters., 653 F. Supp. at 1247.
CES submits that under Section 13-1-172, the Procurement Code adequately protects the bidders. Section 13-1-172 provides that "Any bidder, offeror or contractor who is aggrieved in connection with a procurement may protest to the state purchasing agent or a central purchasing office. The protest shall be submitted in writing within fifteen calendar days after the facts or occurrences giving rise thereto." EASI suggests the remedy under the Procurement Code is inadequate because no specific remedy exists for the problem that arose in this case, which it describes as CES's "direct economic interest in the outcome." We are not persuaded that the remedy provided by the legislature is inadequate or inapplicable. See generally Patterson v. Globe Am. Casualty Co., 101 *1129 N.M. 541, 685 P.2d 396 (Ct.App. 1984) (discussing New Mexico precedent regarding private cause of action under statute not expressly providing one).
The Procurement Code regulates all the stages of the public procurement process. The Code gives the disappointed bidder the right to protest pursuant to Section 13-1-172, and also creates a statutory remedy, namely, judicial review pursuant to Section 13-1-183. The Code does not specifically provide for a damage remedy. However, it does provide for protest and for an appealable determination of the protest. See §§ 13-1-172, -175, -176, -183. We determine that the Procurement Code provides an adequate legal remedy and that the writ of quo warranto was not the proper remedy herein. Cf. State ex rel. Vigil v. Rodriguez, 65 N.M. 80, 332 P.2d 1005 (1958). Accordingly, we affirm the district court on this issue.

III. Antitrust Violation

EASI argues that the district court erred in concluding that it failed to establish an antitrust violation. Under NMSA 1986, Section 57-1-1 (Repl.Pamp. 1987), "Every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is unlawful." In order to establish an antitrust law violation, "the plaintiff must show a conspiracy or combination among two or more persons and an unreasonable restraint of trade due to this combination or conspiracy." Clough v. Adventist Health Sys., Inc., 108 N.M. 801, 804, 780 P.2d 627, 630 (1989) (citation omitted). "Furthermore, the object of the conduct must be to restrain trade." Id. For purposes of the Antitrust Act, NMSA 1986, Sections 57-1-1 to -15 (Repl.Pamp. 1987), "person" is defined as "an individual, corporation, business trust, partnership, association or any governmental or other legal entity with the exception of the state ... and the United States." Section 57-1-1.2.
Here, EASI's brief in chief concedes "that a conspiracy could not exist between CES ... and its [e]xecutive [d]irector, Dr. Luft." Rather, EASI contends on appeal that a conspiracy existed among the various school superintendents who acted in a dual capacity as directors of CES. However, EASI failed to try the case on this theory; the theory was not raised in the complaint, the pre-trial order, or any motion to amend the complaint. "Where the record fails to indicate that an argument was presented to the court below, unless it is jurisdictional in nature, it will not be considered on appeal." Woolwine v. Furr's, Inc., 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App. 1987). To preserve an issue for appellate review, it must appear that the appellant fairly invoked a ruling of the district court on the same grounds argued in the appellate court. Id. at 496, 745 P.2d at 721; see SCRA 1986, 1-046; 12-213(A)(3); 12-216(A). Based on EASI's failure to preserve its theory that a conspiracy existed among the various school superintendents, we do not address this issue.

IV. Violation of Civil Rights

EASI argues that the actions of CES and Luft in attempting to circumvent the competitive-proposal process of the Procurement Code deprived EASI of property rights, including the right to submit a meaningful bid to provide services, in violation of the United States Constitution, and as such were actionable under 42 U.S.C. Section 1983 (1989). EASI maintains that the Procurement Code creates a valuable property interest in all prospective bidders vying to provide services for governmental entities and that such prospective bidders have a sufficient economic interest at stake to enable them to challenge, on constitutional grounds, actions by such public entities which deprive them of their ability to compete.
The district court concluded, inter alia, that (1) no private right of action for disappointed offerors such as EASI was either expressly or impliedly provided under the Procurement Code since Section 13-1-183 provides an adequate legal remedy; (2) EASI was not denied due process nor was it deprived of any property interest; (3) EASI waived any rights it had under the Procurement Code when it failed to seek timely judicial review of the cooperative's action under Section 13-1-183; (4) CES as the alter ego of the member school districts *1130 was immune from the claims for damages on account of alleged civil rights; and (5) there was no evidence that EASI suffered any damages as a result of its failure to obtain either the ancillary services contract or the administering agency contract, nor did EASI prove a loss of profits or any other damages.
This claim, which is based on a statute creating liability for action under color of state law, requires that the plaintiff establish (1) that the defendants acted under color of state law, and (2) that the actions of the defendants caused the plaintiffs to be deprived of a right secured by the Federal Constitution or the laws of the United States. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).
42 U.S.C. Section 1983 provides, in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
CES argues that EASI has failed to prove that CES has acted under color of state law. In support of their argument, CES relies on Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), in which the Supreme Court held that private corporations may not be liable under 42 U.S.C. Section 1983 unless the State is responsible for the acts complained of. "[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Id. at 1004, 102 S.Ct. at 2786.
EASI argues that although CES and Luft maintained their identities as a private entity and a private individual, respectively, they intentionally invoked their relationship with member school districts thereby indicating that their actions were directed by such districts. CES responds that the State was not responsible for, nor did it dictate the complained-of activities conducted by the board of directors of CES.
We note that the activities of CES were conducted by the members of the board of directors, all of whom were superintendents of school districts. In fact, each of the members of the board of directors of CES held that position solely as a result of being employed in a public position.
Alternatively, CES argues that even if state action was involved, EASI was not denied due process because the Procurement Code sets forth provisions to deal with aggrieved bidders or offerors. As previously noted, Section 13-1-172 states that "[a]ny bidder, offeror or contractor who is aggrieved in connection with a procurement may protest to the state purchasing agent or a central purchasing office ... in writing within fifteen calendar days after the facts or occurrences giving rise thereto." Additionally, Section 13-1-183(A) provides for judicial review of all actions authorized by the Procurement Code filed within thirty days of receipt of notice of the determination.
Assuming without deciding that there was action under color of state law and that EASI had a protected property interest, we agree with CES's alternate argument that there was no violation of due process because EASI was given a reasonable opportunity to participate in the protest process afforded pursuant to the Procurement Code. See Atencio v. Board of Educ., 658 F.2d 774 (10th Cir.1981). Accordingly, we affirm the district court on this issue.

CONCLUSION
For the foregoing reasons, we affirm.
IT IS SO ORDERED.
PAMELA B. MINZNER, C.J., and HARTZ, J., concur.