1997-NMCA-053

941 P.2d 515

**HAMILTON ROOFING COMPANY OF CARLSBAD, INC., Plaintiff–Appellant,**

v.

**CARLSBAD MUNICIPAL SCHOOLS BOARD OF EDUCATION, Defendant–Appellee.**

No. 17581.

Court of Appeals of New Mexico.

May 29, 1997.

W.T. Martin, Jr., Law Offices of W.T. Martin, Jr., P.A., Carlsbad, for Plaintiff–Appellant.

Thomas L. Marek, Matthew T. Byers, Marek & Francis, P.A., Carlsbad, for Defendant–Appellee.

### OPINION

HARTZ, Chief Judge.

(1) Under New Mexico's Procurement Code, NMSA 1978, §§ 13–1–28 to –199 (Repl.Pamp.1992 & Cum.Supp.1996), when a central purchasing office of a local public body terminates a contract because it has determined that the contract award was in violation of law, the contractor must be compensated for "actual expenses reasonably incurred under the contract, plus a reasonable profit," if the contractor did not act fraudulently or in bad faith, Section 13–1–182(B). The principal issue on appeal is whether the local public body is relieved of the duty to so compensate the contractor when it is a court, rather than the central purchasing office, that rules the contract award unlawful. Holding that the duty to compensate still exists, we reverse the district court's order granting summary judgment.

### BACKGROUND

(2) In November 1993 the Carlsbad Municipal Schools Board of Education (the Board) invited bids on a project to reroof five buildings. The request for bids required the bidder to submit a bid for one or two alternatives with respect to each building as well as a bid on the project as a whole. Hamilton Roofing Company of Carlsbad, Inc. (Hamilton) was the low bidder with respect to several items, although it did not bid on all the items nor did it submit a bid for the entire project. The Board awarded a contract to Hamilton. Pursuant to Section 13–1–172, Allen Roofing Company (Allen) protested the award to Hamilton, contending that Hamilton had not filed a responsive bid. The Board rejected the protest in a February 10, 1994 letter. Allen then sought judicial review pursuant to Section 13–1–183, naming the Board and Hamilton as Defendants. District Judge R.W. Gallini agreed with Allen. Ruling that Allen was the lowest responsive bidder and that the award to Hamilton was contrary to law, Judge Gallini instructed the Board to award the contract to Allen. No further appeal was taken. The Board's attorney wrote a letter to Hamilton's attorney stating the Board's position that "the contract was judicially declared void."

(3) Hamilton then sought from the Board the expenses it had incurred under the contract, plus some profit. Section 13–1–182 provides as follows:

If, after an award, the state purchasing agent or a central purchasing office makes a determination that a solicitation or award of a contract is in violation of law and if the

business awarded the contract has not acted fraudulently or in bad faith:

    A. the contract may be ratified, affirmed and revised to comply with law, provided that a determination is made that doing so is in the best interests of a state agency or a local public body; or

    B. the contract may be terminated and the business awarded the contract shall be compensated for the actual expenses reasonably incurred under the contract, plus a reasonable profit, prior to termination.

Under the Procurement Code the Board is a "local public body." Section 13–1–67. The Board's "central purchasing office" is the "office or officer ... responsible for the control of procurement of items of ... construction." Section 13–1–37.

(4) The Board rejected Hamilton's claim, so Hamilton filed suit. The district court granted the Board summary judgment. The Board's principal argument on appeal in support of the summary judgment is that Section 13–1–182 does not apply because the Board's central purchasing office did not "make[ ] a determination that a[n] ... award of [the] contract [was] in violation of law." It relies on the Procurement Code's definition of "determination": "the written documentation of a decision of a *procurement officer* including findings of fact required to support a decision." Section 13–1–52 (emphasis added). The Board points out that the written decision that the contract award was unlawful was a decision by a judge, who is not a "procurement officer" within the meaning of the Procurement Code. *See* § 13–1–75 (" 'Procurement officer' means any person or a designee authorized by a ... local public body to enter into or administer contracts and make written determinations with respect thereto.' "). We are not persuaded by this analysis.

## DISCUSSION

(5) The Board's argument is an interesting one. It concedes that if its central purchasing office had issued a written decision stating that the contract award to Hamilton was in violation of law, then Section 13–1–182 would entitle Hamilton to seek compensation for actual expenses plus profit. (Hamilton would, however, still need to establish that it

had not acted fraudulently or in bad faith. *See id.*) But, it argues, because the central purchasing office erroneously upheld the contract and it was Judge Gallini who ruled the award invalid, Hamilton was entitled to no such relief. In other words, because the Board's central purchasing office ruled incorrectly on Allen's protest, the Board is relieved of the burden of compensating Hamilton for its expenses and profit. We reject this argument.

■ (6) Our rejection of the Board's argument is predicated on the nature of judicial review—in particular, the relationship between a reviewing court and the lower tribunal whose decision it reviews. The function of the reviewing court is to decide whether the tribunal acted properly and if not, what action the tribunal should have taken. When no "reversible" error is found, the decision of the lower tribunal stands. When the reviewing court rules that there was error, the remedy is to remand to the lower tribunal for further proceedings. In those circumstances when the lower tribunal should have reached a particular decision different from the one it originally reached, the reviewing court may remand with instructions to reach the particular decision. In substance, if not always in form, the reviewing court orders the lower tribunal to do what it should have done in the first instance. A recent decision by our Supreme Court concludes with typical language used by appellate courts in ruling that the lower court should have reached a contrary result: "We therefore reverse the district court and remand for entry of judgment for the Mulvaneys." *Green Valley Mobile Home Park v. Mulvaney,* 121 N.M. 817, 821, 918 P.2d 1317, 1321 (1996). The power of judicial review is the power to command a lower tribunal to do now what the law required it to do earlier. This power would be undermined if an act ordered by the reviewing court did not carry the same legal consequences as it would if performed by the lower tribunal on its own initiative.

(7) The language of Section 13–1–182 must be read in light of the right to judicial review provided in Section 13–1–183 and the above-described nature of judicial review. Section 13–1–182 recites the remedies available if,

after the award of a contract, a central purchasing office determines that the award was in violation of law. But recognizing that a central purchasing office may erroneously determine that such an award complied with law, Section 13–1–183 permits a court to correct the error. When a court does so, it in essence requires the central purchasing office to make a new determination—a determination that the contract award was in violation of law. In our view the Procurement Code, considered in its entirety, contemplates that the "determination" that triggers relief under Section 13–1–182 could be either (1) a determination by the central purchasing office in the first instance or (2) a determination that the office is required to make after judicial review of the initial determination.

(8) To be sure, Judge Gallini did not explicitly order the Board to make a new determination. His order stated simply:

1. The decision of the Board on the protest was contrary to law, clearly erroneous and not based upon substantial evidence and is, therefore, set aside.

2. The Board shall award the contract to [Allen].

But the omission of language such as "The Board is instructed to enter a determination that the award was contrary to law" is merely a matter of form. Our situation is not unlike that of the California Supreme Court in deciding whether interest should begin accruing from the date of the original judgment (which would be proper if the judgment had been affirmed or modified) or from the date of the judgment entered after the first appeal (which would be proper if the judgment had been reversed). The Court wrote:

It is not the form of the order on the first appeal that controls, but the substance of that order. Obviously, since the appellate court on the first appeal decided that not $8,168.25 but $25,000 was due as a matter of law, and no further proceedings were required, it could and perhaps should have formally modified the first judgment . . . instead of reversing it. The important question as to when interest commences should not depend on mere formalism, but on the substance of the order.

*Snapp v. State Farm Fire & Cas. Co.*, 60 Cal.2d 816, 36 Cal.Rptr. 612, 615–16, 388 P.2d 884, 887–88 (1964) (en banc).

(9) Here, the availability of relief under Section 13–1–182 should not depend upon whether Judge Gallini specifically ordered the Board to enter a determination that the award to Hamilton was contrary to law. Such a specific order would not have changed the substance of his ruling. Indeed, the Board's response to the order was about what one would expect if Judge Gallini had ordered a revised determination by the Board. The Board's attorney wrote Hamilton's attorney that "the contract was judicially declared void." This letter might be deemed to be a "determination" satisfying Section 13–1–182, although we do not rest our decision on that ground.

(10) To sum up, the "determination" referenced by Section 13–1–182 can be either a determination made in the first instance by the central purchasing office or a determination that a reviewing court orders that office to make. Moreover, the failure of a reviewing court explicitly to order a revised determination by the central purchasing office is a matter of form rather than substance and does not change the legal consequences of a judicial ruling that the award was contrary to law. In other words, we hold that for the purposes of Section 13–1–182, when a court rules that a central purchasing office has erroneously determined that a contract award was lawful, the office shall be deemed to have entered a revised determination that the award was invalid, regardless of whether or not the court expressly orders the issuance of a new determination.

(11) The Board's policy arguments for affirmance are not persuasive. It contends that to permit Hamilton's claim would be contrary to the spirit and overall intent of the Procurement Code. It relies on *State ex rel. Educational Assessments Systems, Inc. v. Cooperative Educational Services*, 115 N.M. 196, 848 P.2d 1123 (Ct.App.1993) (hereinafter *EASI*) for the proposition that the primary purpose of the Code is not to protect bidders but to protect the government's interests in economical procurement. In *EASI* we held that the disappointed bidder was

limited to its remedies under the Procurement Code and could not bring an action against the governmental agency for damages not provided by the Code. The Board contends that *EASI* argues against permitting recovery for Hamilton as well. Hamilton, however, is pursuing a remedy provided by a section of the Procurement Code itself. Pursuing the remedy could hardly be contrary to the Code. The question is solely how to interpret the section. Our interpretation does not impede the efficient functioning of the Procurement Code and is consistent with the directive of Section 13–1–29(A) that the Procurement Code shall be liberally construed and applied.

(12) The Board also argues that the sole purpose of Section 13–1–182 is "to deter purchasing agents from changing the rules in the middle of the game." According to this argument, because it was a court, not the purchasing agent, who ruled the award unlawful, that purpose would not be served by granting relief to Hamilton. We cannot agree, however, with the Board's perception of the purpose of Section 13–1–182. Permitting remedies under that section only when the purchasing agent, and not a court, ruled that an award was unlawful, would create an incentive for purchasing agents to refuse to recognize awards as unlawful, thereby requiring protestors to seek relief in court. We can see no reason why the legislature would want to discourage a purchasing agent from properly recognizing that a contract award had been in violation of law. As for the possibility that a purchasing agent would change the rules in the middle of the game, any impropriety could be corrected by judicial review under Section 13–1–183.

■ (13) Finally, the Board contends that Hamilton failed to exhaust its statutory remedies by not appealing Judge Gallini's decision. This argument misconceives Hamilton's position at this stage of the proceeding. Hamilton is not challenging Judge Gallini's decision that the contract award was unlawful. Instead, what Hamilton is doing is accepting the correctness of the decision and then pursuing relief that flows from the determination that the award was unlawful. We see no reason to forbid a party from seeking a remedy because it failed to challenge a prior ruling, when granting the relief presently sought would in no way be inconsistent with the prior ruling.

## CONCLUSION

(14) For the above reasons, we reverse the summary judgment in favor of the Board and remand for further proceedings consistent with this opinion.

(15) **IT IS SO ORDERED.**

DONNELLY and PICKARD, JJ., concur.