STATE *v.* NECAISE

No. 40003          June 11, 1956          87 So. 2d 922

*John H. Price,* Asst. Atty. Gen., Jackson, for appellant.

*Wingo & Finch,* Hattiesburg, for appellee.

KYLE, J.

This case is before us on appeal by the State of Mississippi, under authority of Section 1153, Code of 1942, from a judgment of the Circuit Court of Forrest County acquitting the defendant, Amos Necaise, on a charge of the unlawful possession of a whiskey still.

Necaise was indicted, along with George Tisdale, at the January 1955 term of the court and was tried and convicted and sentenced to serve a term of two years in the state penitentiary. A motion for a new trial was filed and taken under advisement, and at the April 1955 term of the court an order was entered granting the defendant a new trial. Necaise was again tried at the April term of the court. The first witness called to testify for the State was Oscar W. Runnels, a county patrol officer of Forrest County. Runnels testified that he made an affidavit for a search warrant for intoxicating liquors before F. F. Poyner, Justice of the Peace for District No. 3 of Forrest County, on December 30, 1954, and obtained a search warrant authorizing a search of the premises hereinafter described, and that he and County Patrolman T. H. Gilkey served the search warrant in their capacity as county patrol officers on the same day. The defendant's attorney objected to the testimony of the witness relating to the service of the search warrant and the search of the premises described therein on the ground that the two officers had no authority under the law to serve a search warrant. The jury was excluded from the court room and the examination of the witness was continued in the jury's absence.

The search warrant which the witness identified and offered in evidence was directed to any lawful officer of Forrest County, and authorized and directed the search of the premises, the occupants of which were unknown, described as being located on Highway No. 11 South, about five or six miles below the corporate limits of the City of Hattiesburg, to the left side of Highway No. 11

South at "a place where Jeff Boles did run a beer parlor —the second building toward Hattiesburg from Sullivan-Kelsing truck stop, in said county and state." Runnels testified that he and Gilkey went to the premises and executed the search warrant, by delivering to Necaise a copy of the search warrant and making a search of the premises. They found in the building a whiskey still and 4800 gallons of mash in the containers. Runnels admitted that at the time he executed the search warrant Forrest County had a duly elected and qualified sheriff and several deputies, and that he did not serve the search warrant as a deputy sheriff or as a constable. He stated that he served the search warrant while acting solely as a county patrol officer. By stipulation of counsel it was agreed that county patrol officer Gilkey would testify to the same facts as those testified to by Runnels.

The court sustained the defendant's objection to the testimony relating to the service of the search warrant and the search of the premises by the county patrol officers, on the ground that the county patrol officers did not have authority under the law to serve the search warrant. The State offered no other testimony, and the court granted the defendant's request for a directed verdict of acquittal and entered a judgment discharging the defendant.

The only question that we have to decide on this appeal is whether the court erred in sustaining the appellee's objection to the testimony of the county patrol officers relative to the execution of the search warrant and the search of the premises, and in directing a verdict of acquittal.

The record shows that the two county patrol officers were employed by the board of supervisors of Forrest County on November 18, 1954, under authority of Sections 8061 and 8062, Code of 1942, as amended by Chapter 277, Laws of 1946, and that the two officers qualified immediately by taking the oath prescribed in Section

268 of the State Constitution, and by executing bonds in the sum of $1,000 each, conditioned that they would faithfully perform their duties as county patrol officers. Their employment was terminated at the January 1955 meeting of the board of supervisors, because of the insufficiency of the road and bridge funds to justify the continuation of the employment. But they were still employed as county patrol officers on December 30, 1954, when the above mentioned search warrant was executed.

Sections 8061 and 8062, Code of 1942, were first enacted as Chapter 202, General Laws of Mississippi, 1926. The original act authorized the board of supervisors of any county having an assessed valuation of twenty-five million dollars or more to employ not exceeding three men "whose duty it shall be to patrol the roads of the county and to enforce the road and motor vehicle laws." The statute was amended by Chapter 277, Laws of 1946, so as to authorize the board of supervisors to employ not exceeding three men in counties of classes 1 and 2, and not exceeding two men in counties of other classes, "whose duty it shall be to patrol the roads of the county and to enforce the road and motor vehicle laws." The statute as amended provided that the patrolmen should not have the power to enforce any of the provisions of law relating to the taxation of motor vehicles using the highways of the state, and should not have the power and authority to enforce traffic laws on any highway of the state highway system, unless authorized to do so by the commissioner of public safety. The statute in its original form, and in its amended form, authorized the patrol officers "to do and perform all acts authorized to be done by the sheriff, constable or any peace officer."

It is upon this last mentioned provision of the statute, which appears as the first sentence of Section 8062, Code of 1942, as amended, that the State relies to obtain a reversal of the judgment on this appeal. It is argued that the language used in Section 8062, that "Said patrol

officers are hereby authorized to do and perform all acts authorized to be done by the sheriff, constable, or any peace officer,'' is clear and unequivocal, and that the road patrolmen are given the same authority for the serving of search warrants or other process of any kind as is vested in the sheriff, constable or other peace officer of the county, and that the trial judge erred in holding that the county patrol officers did not have legal authority to serve the search warrant issued in this case. The State's attorneys admit that the statute makes it clear that the primary duty and responsibility of such patrol officers is to patrol the roads of the county and enforce the road and motor vehicle laws. But it is argued that the statute also provides that ''in addition to their duties as peace officers,'' it shall be the duty of the patrol officers to note the condition of the roads and bridges of the county and make report thereof to the board of supervisors; and that the use of the words, ''in addition to their duties as peace officers,'' indicates that the legislature intended to bestow upon the patrolmen the general authority to do and perform any and all acts authorized to be done by the sheriff, constable or other peace officer, although such acts may be wholly unrelated to their duties as patrol officers.

■■ ■ But we think that the provision of the statute which authorizes the patrol officers ''to do and perform all acts authorized to be done by the sheriff, constable, or any peace officer,'' is intended to vest in the patrol officers only such police powers as may be necessary to enable them to perform properly the duties imposed upon them by the statute as county road patrolmen. We do not think that it was the intention of the legislature to authorize the patrol officers who were employed ''to patrol the roads of the county and to enforce the road and motor vehicle laws,'' to take over the duties or exercise the powers of the sheriff, or constable or other peace officer, in the enforcement of the general criminal laws

of the state or in the service of criminal or civil process in cases which do not arise out of and have no relation to the performance of their duties as county road patrolmen.

The primary rule of construction of statutes is to ascertain and declare the intention of the legislature. 50 Am. Jur. 201, Statutes, par. 223. And the court in construing a statute of this kind, will seek to ascertain and give effect to the legislative intent. Kennington v. Hemingway, 101 Miss. 259, 57 So. 809, 39 L.R.A. (N.S.) 541, Ann. Cas. 1914B 392; City of Holly Springs v. Marshall County, 104 Miss. 752, 61 So. 703; Prather v. Googe, 108 Miss. 670, 67 So. 156; Money v. Wood, 152 Miss. 17, 118 So. 357; Gift v. Love, 164 Miss. 442, 144 So. 562, 86 A.L.R. 63.

It often happens that the true intention of the lawmaking body, though obvious, is not expressed by the language employed in a statute when that language is given its literal meaning. In such case, the carrying out of the legislative intention, which is the prime and sole object of all rules of construction, can only be accomplished by departure from the literal interpretation of the language employed. Hence it is a general rule that the manifest intent of the legislature will prevail over the literal import of the words. 50 Am. Jur. 233, Statutes, par. 240; State Board of Education v. Mobile & Ohio Railroad Co., 72 Miss. 236, 16 So. 489; State v. J. J. Newman Lumber Co., 102 Miss. 802, 103 Miss. 263, 59 So. 923, 60 So. 215, 45 L.R.A. (N.S.) 851. In State Board of Education v. Mobile & Ohio Railroad Co., supra, the Court said: "It is familiar learning that, in the construction of statutes, courts chiefly desire to reach and know the real intention of the framers of the law, and, reaching and knowing it, then to adopt that interpretation which will meet the real meaning of the legislature, though such interpretation may be beyond or within, wider or narrower than, the mere letter of the enactment."

■■ We think that the first sentence of Code Section 8062 means that, the patrol officers, in the performance of their duties in patrolling the roads of the county and enforcing the road and motor vehicle laws, are authorized to do and perform all acts authorized to be done by the sheriff, constable, or any other peace officer in the performance of his duties. such peace officer. The patrol officers are authorized as an incident to the performance of their duties as county road patrolmen, to arrest without warrant any person or persons committing or attempting to commit any misdemeanor, felony or breach of the peace within their presence or view on any road of the county, or the road right of way, and to pursue any person committing such offense to any place in the county where he may go, or to arrest fleeing felons using the county roads to effect their escape; and, if authorized and empowered to do so by the commissioner of public safety, the patrol officers may enforce or aid in the enforcement of the traffic laws upon any highway of the state highway system. The patrolmen may be authorized to serve search warrants where such action is necessary as an incident to the performance of their duties as county road patrolmen. But their powers as police officers are limited to the performance of their duties as county road patrolmen. We find nothing in the statute to warrant the conclusion that the legislature intended to make the county road patrolmen general police officers for the enforcement of the general criminal laws of the State and the service of criminal and civil process in cases which do not arise out of and have no relation to the performance of their duties as county road patrolmen.

The judgment of the lower court is therefore affirmed.

Affirmed.

All judges concur except *Holmes, J.,* who took no part.