## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00710-SCT

*CITY OF DURANT*

*v.*

*LAWS CONSTRUCTION COMPANY, INC.*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 06/27/94 |
| TRIAL JUDGE: | HON. EUGENE M. BOGEN |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES H. POWELL III |
| ATTORNEY FOR APPELLEE: | RICHARD C. BRADLEY, III |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 8/20/98 |
| MOTION FOR REHEARING FILED: | 4/17/97 |
| MANDATE ISSUED: | 8/27/98 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Motion for Rehearing granted. The orginial opinion in this case is withdrawn and these opinions are substituted therefor.

¶2. The City of Durant accepted a construction bid from King Metal Buildings, Inc., (herein after "King") which failed to include the contractor's Certificate of Responsibility number on the exterior of the envelope as required by Miss. Code Ann. § 31-3-21. King's bid was the lowest bid. Laws Construction Co. (herein after "Laws") had the second lowest bid. Laws objected to the bid procedure. The City attorney advised the City aldermen and the mayor that previous Mississippi Attorney General opinions stated that a contractor's bid which failed to include the certificate of responsibility number on the exterior of the envelope, but was included within the bid, was valid. The City awarded the bid to King. Laws appealed the City's decision pursuant to Miss. Code Ann. § 11-51-75.

¶3. The circuit court ruled that Miss. Code Ann. § 31-3-21 was clear and unambiguous. The circuit court ruled that § 31-3-21 required a bid to include the certificate of responsibility number on the exterior of the bid envelope. If a bid fails to follow the procedures provided in § 31-3-21, then the public agency is forbidden from opening and accepting the bid. Thus, the circuit court ruled the City

violated § 31-3-21 by opening and considering King's bid. If the City had not considered King's bid, the City would have accepted Laws' bid, which was the next lowest. The circuit court determined that either Laws would be entitled to the contract or the City could have rejected all bids.

¶4. Pursuant to Miss. Code Ann. § 11-51-75, the circuit court is required to render a judgement which the municipal ought to have rendered. Thus, the circuit court would have ordered the City to not consider King's bid, and either accept the next lowest bid or reject all bids and rebid the project. However, rather than wait for a decision of the appeal, the City proceeded with the illegal award of the contract. At the initial hearing, King was substantially through with the project. Since the project was precluded from being awarded to Laws due to its substantial completion, the circuit court determined that Laws was entitled to recover damages. A hearing was conducted to determine damages. The circuit court awarded Laws a judgement against the City for $168,495.00 in compensatory damages plus $15,978.95 in costs and attorneys' fees. The City appealed to this Court.

## I.

¶5. On September 2, 1993, the City of Durant, pursuant to the requirements of law, advertised and published for bidders to construct a 100,000 square foot building suitable for industrial purposes (herein after "project"), in accordance with plans and specifications developed by the City. All bids received pursuant to the advertisement were opened on October 8, 1993 at 2:00 p.m. After the deadline, the project architect, Mr. Clingan, opened the sealed bids. As he picked up each bid envelope, he read the name of the bidder and stated whether or not there was a certificate of responsibility number noted on the outside of the bid envelope, pursuant to Miss. Code Ann. § 31-3-21. Clingan did not read aloud the certificate of responsibility number itself.

¶6. King's sealed bid did not have a certificate of responsibility number noted on the outside of the envelope. Clingan announced that King's bid envelope did not have the certificate of responsibility number noted on the outside of the envelope. However, Clingan announced that he would open the envelope to see if the certificate of responsibility number was located on the bid form in the envelope since he had knowledge that King did have a certificate of responsibility number. Clingan opened the bid and announced that the certificate of responsibility number was identified in the bid. As with all the other bids, the King bid was announced and the amount was included on the bid tabulation sheet. All other bids, including Laws', included the contractor's certificate of responsibility number on the exterior of the envelope.

¶7. The bids received by the City were as follows:

King Metal Buildings, Inc. $1,258,900.00

Laws Construction Co., Inc. $1,296,000.00

Harold West Contractors, Inc. $1,426,300.00

Ralph McKnight & Son Construction, Inc. $1,396,800.00

Fountain Construction Co., Inc. $1,432,000.00

Evan Johnson & Sons Construction, Inc. $1,638,990.00

Clingan announced that King was the lowest bidder. The second lowest bidder was Laws. On the evening of October 8, 1993, Laws sent a letter to the mayor of the City, the Hon. Ben Killebrew. The letter protested the opening of King's bid since the bid violated §31-3-21. The letter also stated that Laws' bid was the lawful low bid.

¶8. On October 12, 1993, the aldermen and the mayor for the City convened. At the meeting, attorney for the City, James H. Powell, III, explained the factual background concerning the bids of the project. Powell stated that he had contacted the Mississippi Attorney General's office inquiring whether it had issued an opinion similar to this particular situation. Powell stated that the Attorney General's office sent him a copy of a letter dated September 4, 1991 from the Attorney General's office to Everett T. **Sanders**, concerning a bid protest similar to Laws' protest. The Attorney General's office also sent the opinions **Lovell** and **Persons**, dated June 11, 1979 and April 24, 1987, respectively. These opinions advised that under the circumstances, the City could legally award the bid to King. Richard C. Bradley, III, attorney for Laws, addressed the board of aldermen and stated that the plain language of § 31-3-21 required a bid to have the certificate of responsibility number on the exterior of the envelope in order for the City to legally open and accept a bid. Todd Bruce, a Field Representative for the State Board of Contractors for seven years, also addressed the aldermen. Bruce stated that a bid may not be opened without a certificate of responsibility number located on the exterior of the envelope. Bruce stated that he has attended many bid openings and that he always advised the public body not to open a bid envelope which did not have a certificate of responsibility number located on the exterior of the envelope. Clingan was also present. Clingan stated that he had checked the prospective bidders with the State Board of Contractors to verify whether each contractor had a certificate of responsibility number. Prior to opening the bids, Clingan stated that all bidders held valid certificates.

¶9. The board of aldermen adopted a resolution that the project be awarded to King. The minutes of the meeting of October 12, 1993, were approved by the mayor on the evening of October 19, 1993. After the mayor's approval, Laws filed a bill of exceptions with the City at 8:00 p.m. on October 19, 1993, pursuant to § 11-51-75 for the purpose of appealing the City's action. The mayor amended and signed the bill of exceptions on October 22, 1993. The city clerk transmitted the bill of exceptions to the Clerk of the Circuit Court of Holmes County. The Circuit Court of Holmes County held a hearing in Greenwood, Leflore County, Mississippi on January 21, 1994, before the Honorable Eugene Bogan, Circuit Judge.

¶10. At the appeal hearing, the circuit court granted the joint motion of the Mississippi State Board of Contractors and the Associated Builders and Contractors to file an *amicus curiae* brief.

¶11. On February 17, 1994, Judge Bogan entered a partial judgement and issued findings of fact and conclusions of law. The circuit court ruled in favor of Laws and the position taken by the State Board of Contractors. The circuit court ruled that Miss. Code Ann. § 31-3-21 was clear and unambiguous. The circuit court ruled that § 31-3-21 required a bid to include the certificate of responsibility number on the exterior. If a bid fails to follow the procedures provided in § 31-3-21, then the public agency is forbidden from opening and accepting the bid. Thus, the circuit court ruled that the City violated § 31-3-21 by opening and considering King's bid. The City concedes that if it had not considered King's bid, the City would have accepted Laws' bid, which was the next lowest. Furthermore, the City conceded that it would have accepted Laws' bid and awarded Laws the contract for the Project if the

City had neither opened nor considered King's bid. The circuit court determined that Laws would be entitled to the contract or the City could have rejected all bids.

¶12. Pursuant to Miss. Code Ann. § 11-51-75 (1972), the circuit court is required to render a judgement which the municipal ought to have rendered. Thus, the circuit court would have ordered the City to not consider King's bid, and either accept the next lowest bid or reject all bids and rebid the project. However, rather than wait for a decision of the appeal, the City proceeded with the illegal award of the contract. At the time of the initial hearing, King was substantially through with the project. Since the project was precluded from being awarded to Laws due to its substantial completion, the circuit court determined that Laws was entitled to recover damages. The circuit court ordered discovery on the issue of damages until March 10, 1994.

¶13. A hearing was conducted to determine damages on June 21, 1994, in Greenville, Mississippi. The circuit court awarded Laws a judgement against the City for $168,495.00 in compensatory damages plus $15,978.95 in costs and attorney' s fees. The City appeals to this Court.

## II.

### WHETHER THE CIRCUIT COURT CORRECTLY RULED THAT THE CITY OF DURANT IMPROPERLY OPENED, IMPROPERLY CONSIDERED, AND IMPROPERLY ACCEPTED THE BID OF KING METAL BUILDINGS, INC., AND WAS IN VIOLATION OF § 31-3-21(1)&(2)?

¶14. The crux of the case *sub judice* centers on Miss. Code Ann. § 31-3-21 (Supp. 1997), which reads in pertinent part:

> (1) It shall be unlawful for any person who does not hold a certificate of responsibility issued under this chapter, or a similar certificate issued by another state recognizing such certificate issued by the State of Mississippi, to submit a bid, enter into a contract, or otherwise engage in or continue in this state in the business of a contractor, as defined in this chapter. *Any bid which is submitted without a certificate of responsibility number issued under this chapter and without that number appearing on the exterior of the bid envelope, as and if herein required, at the time designated for the opening of such bid, shall not be considered further, and the person or public agency soliciting bids shall not enter into a contract with a contractor submitting a bid in violation of this section.* In addition, any person violating this section by knowingly and willfully submitting a bid for projects without holding a certificate of responsibility number issued under this chapter, as and if herein required, at the time of the submission or opening of such bid shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not more than One Thousand Dollars ($1,000.00), or by imprisonment for not more than six (6) months, or by both such fine and imprisonment.

> (2) All bids submitted for public or private projects where said bid is in excess of Fifty Thousand Dollars ($50,000.00) with respect to public projects and in excess of One Hundred Thousand Dollars ($100,000.00) with respect to private projects *shall contain on the outside or exterior of the envelope or container of such bid the contractor's current certificate*

**number, and no bid shall be opened or considered unless such contractor's current certificate number appears on the outside or exterior of said envelope or container**, or unless there appears a statement on the outside or exterior of such envelope or container to the effect that the bid enclosed therewith did not exceed Fifty Thousand Dollars ($50,000.00) with respect to public projects or One Hundred Thousand Dollars ($100,000.00) with respect to private projects. Any person violating the provisions of this subsection shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not more than One Thousand Dollars ($1,000.00), or by imprisonment for not more than six (6) months, or by both such fine and imprisonment.

(emphasis added).

## A. Clear and Unambiguous and Legislative Intent

¶15. The statute clearly and unambiguously states that a bid may not be opened, the bid may not be considered, and the bid may not be awarded the contract if the contractor fails to include the certificate of responsibility number on the exterior of the envelope. The only exception to the rule is when a bid for a public project is not in excess of $50,000.00, or not in excess of $100,000.00 for a private project. However, even this exception requires that the bid contain a statement on the exterior of the bid envelope that the bid did not exceed the designated monetary limit.

¶16. In the case *sub judice*, King failed to include a certificate of responsibility number on the exterior of the envelope. Furthermore, the bid was in excess of $50,000.00 for a public project. Therefore, the City should not have opened, considered, nor awarded King's bid. By opening, considering, and contracting with King, the City blatantly violated § 31-3-21.

¶17. It is well settled law in Mississippi that when a statute is clear and unambiguous then there is no room for construction. In *Marx v. Broom*, 632 So.2d 1315, 1318 (Miss. 1994), we stated:

When the language used by the legislature is plain and unambiguous, such as the language here, and where the statute conveys a clear and definite meaning, as here, the Court will have no occasion to resort to the rules of statutory interpretation. *State v. Heard*, 246 Miss. 774, 151 So.2d 417 (1963). The courts cannot restrict or enlarge the meaning of an unambiguous statute. *City of Hazlehurst v. Mayes*, 96 Miss. 656, 51 So. 890 (1910); *Hamner v. Yazoo Delta Lumber Co.*, 100 Miss. 349, 56 So. 466 (1911); and *State v. Traylor*, 100 Miss. 544, 56 So. 521 (1911).

¶18. Only when a statute is unclear and ambiguous will the court employ rules of construction. *Clark v. State ex rel. Mississippi State Med. Ass'n*, 381 So.2d 1046, 1048 (Miss. 1980). The City challenges the clear and unambiguous holding on two grounds. The City argues that this Court should create an exception to § 31-3-21 by allowing contractors, who have negligently left their certificate of responsibility numbers off the exterior of the envelopes, to still have their bids considered. The City argues that legislative intent and the spirit of Title 31 allows the exception. Secondly, the City argues that the Attorney General's office has issued three opinions that find in favor of the City.

¶19. The City, and the Attorney General opinions argue that the intent of § 31-3-1, *et. seq.*, is stated

in Miss. Code Ann. § 31-3-2 (1990) as follows:

> The purpose of Chapter 3, Title 31, Mississippi Code of 1972, is to protect the health, safety and general welfare of all persons dealing with those who are engaged in the vocation of contracting and to afford such persons an effective and practical protection against incompetent, inexperienced, unlawful and fraudulent acts of contractors.

¶20. The City contends that the act was created to provide a list of competent, experienced contractors. A certificate of responsibility indicates that the contractor is competent. By requiring a contractor to obtain a license, the act helps prevent fraudulent and otherwise incompetent contractors from making bids. Furthermore, the City states that § 31-7-13(d) provides that "Purchases may be made from the lowest and best bidder." Therefore, the City contends that the act requires licensed contractors, as reflected by issuance of a certificate of responsibility number, in order to help maintain honest, competent contractors, while at the same time provide competitive prices. The City argues that since King was a licensed contractor, as reflected by the certificate of responsibility number included within the bid, and made the lowest bid, then King should be awarded the bid. The City argues that such a conclusion reflects the intent of the legislature to obtain the best, lowest prices through competitive bidding with honest, competent contractors. *See* Attorney General Opinion, **Persons**, 1987. Since King had a valid certificate of responsibility number but merely negligently omitted it on the exterior of the envelope, the negligence was a mere technicality not contrary to legislative intent.

¶21. The City's position is flawed. Clearly § 31-3-1, *et seq*., was enacted to protect the public welfare from fraudulent acts by a contractor. One of the essential protections of the act is the very procedure used in the bidding process. This is reflected by the State Board of Contractors's interest in the case *sub judice*. The Board of Contractors is empowered through § 31-3-1, *et seq*., to oversee applicants for contractors' licenses to protect against fraudulent and incompetent contractors and to administer the regulatory scheme established by the Legislature. The Board of Contractors argues that any interpretation other than the literal meaning jeopardizes the bidding process. The Board and the Mississippi Associated Builders and Contractors contend that the legislature intentionally created a "bright line" test for determining whether a bid should be opened. Such a literal procedure assures all bidders that all bids will be treated the same.

¶22. The City cites **Gentry v. Wallace**, 606 So.2d 1117 (Miss. 1992), and **State v. Necaise**, 228 Miss. 542, 87 So.2d 922 (1956), for the notion that the manifest intent of the legislature will prevail over the literal import of the words of the statute. However, both cases are distinguishable in that the wording of the statutes in those cases was ambiguous. In **Necaise**, the wording of the statute at issue left open the question of how much police power is granted to the county patrol officers. On first glance the statute opened the door to the interpretation of granting the county patrol officers the equivalent powers as those vested in the sheriff and constable. We limited the county patrol officers' power by clarifying that they are authorized to have such powers only within the performance of their duties as county patrol officers. **Necaise**, 228 Miss. at 549, 87 So. 2d at 925. Hence, this Court was called upon to clarify the ambiguity.

¶23. In **Gentry**, we addressed when the statute of limitations accrues in a wrongful death action arising in the context of medical negligence. Ambiguity in the language of the statute existed as to

whether a wrongful death action in such circumstances accrues at the time of death or at the time of the negligent medical act. *Gentry*, 606 So.2d at 1119. We looked to the intent of the legislature to help clarify the ambiguity. These two cases do not overrule, but rather affirm, the long standing principle that when a statute is clear and unambiguous, then no rules of construction need be applied.

## B. Attorney General Opinions

¶24. A considerable amount of the City's argument in regards to the interpretation of the statute relied on three Attorney General opinions. The three opinions stated that in a factual circumstance almost identical to the case *sub judice*, a strict reading of § 31-3-21 is not necessary so that a public body may accept the lowest bid, even though the bid did not include the certificate of responsibility number on the exterior of the envelope as long as the bidder did have a certificate of responsibility number. *See* Attorney General Opinions, **Lovell** (issued June 8, 1979); **Persons** (issued April 24, 1987); **Sanders** (issued September 4, 1991). However, Attorney General opinions are not binding nor prohibit liability when a court of competent jurisdiction declares that the opinions are manifestly wrong and without any substantial support. *See* Miss. Code Ann. § 7-5-25 (Supp. 1997). For the reasons previously explained, we now state that the Attorney General opinions, *supra*, are manifestly wrong and not binding.

¶25. The City claims to have acted in good faith when relying on the Attorney General opinions. The City argues that even if this Court does not reach the same conclusion in regards to the interpretation of § 31-3-21 as the Attorney General opinions, the correct construction should only apply to future applications of the statute. We have in the past, when determining that an Attorney General opinion was erroneous, applied the correct construction in future cases thereby not penalizing a party's reliance. *See Meeks v. Tallahatchie County*, 513 So.2d 563, 568 (Miss. 1987). However § 7-5-25 requires the party to contact the Attorney General's office *in writing* requesting an opinion on *his* particular facts. In return, the Attorney General's office will prepare and deliver a legal written opinion. In the case *sub judice*, the City merely spoke with the Attorney General's office over the phone. Furthermore, the Attorney General's office sent opinions regarding similar circumstances, and did not render a written opinion with regard to the particular facts in the case *sub judice*, as required by the statute. Therefore, the City should be held liable.

**III.**

> **WHETHER THE PARTIAL JUDGEMENT ISSUED BY THE CIRCUIT COURT OF HOLMES COUNTY, MISSISSIPPI ON FEBRUARY 17TH, 1994 IS VOID BECAUSE THE INITIAL HEARING WAS HELD IN AN IMPROPER VENUE?**

¶26. The City contends that the circuit court's partial judgement issued in Holmes County, Mississippi on February 17, 1994, is void because the initial hearing was held in an improper venue. *See* Miss. Code Ann. § 11-51-75 (1972). The initial hearing was held on January 21, 1994, in the Leflore County Courthouse in Greenwood, Mississippi. However, the City did not object to venue until the second hearing held on June 21, 1994, in Greenville, Mississippi. Objections to venue are waived if not raised timely. *Lowrey v. Will of Smith*, 543 So.2d 1155, 1159 (Miss. 1989); *H & W Transfer & Cartage Serv., Inc. v. Griffin*, 511 So.2d 895, 901 (Miss. 1987); M.R.C.P. 12(h)(1). The City should have objected to venue not later than at the first hearing.

**IV.**

**WHETHER THE CITY OF DURANT WAS IMPROPERLY DENIED A JURY TRIAL ON THE ISSUE OF DAMAGES?**

**V.**

**WHETHER THE CIRCUIT COURT ERRED IN AWARDING LAWS CONSTRUCTION CO. DAMAGES AGAINST THE CITY OF DURANT FOR LOST PROFITS AND ATTORNEY FEES?**

¶27. The next two issues are considered together because both raise the question as to whether the circuit court had jurisdiction to hold a hearing to determine damages in conjunction with Section 11-51-75.

¶28. The City contends that the circuit court lacked authority to hold a hearing to award monetary damages. Section 11-51-75 provides the proper means to appeal a municipal's decision. In the case *sub judice*, Laws correctly challenged the City's decision to award the project contract pursuant to § 11-51-75. ***See South Cent. Turf, Inc. v. City of Jackson***, 526 So.2d 558 (Miss. 1988). Section 11-51-75, in pertinent part, states, "If the judgment be reversed, the circuit court shall render such judgment as the board or municipal authorities ought to have rendered, and certify the same to the board of supervisors or municipal authorities. Costs shall be awarded as in other cases." Under normal circumstances, the circuit court would have ordered the City not to consider King's bid, and either accept the next lowest bid or reject all bids and rebid the project. However, rather than wait for a decision of the appeal, the City proceeded with the illegal award of the contract. At the initial hearing, King had substantially completed the project. The City conceded that it would have accepted Laws' bid and awarded it the contract for the Project if Laws' bid had been the lowest bid. Furthermore, the City would have accepted Laws' bid and awarded Laws the contract for the Project if the City had neither opened nor considered King's bid. Since the project was precluded from being awarded to Laws due to its substantial completion, the circuit court determined that Laws was entitled to recover damages. The circuit court reasoned that to hold otherwise is to deny a remedy to a wrong and to provide an avenue for which public bodies may disavow bidding laws. Judge Bogen assessed the situation as follows, "I can't do [what the statute proscribes] but I can't permit the City of Durant to act illegally and escape all liability...."

¶29. Thus, the issue arises whether the circuit court, sitting as an appellate court pursuant to § 11-51-75, without a jury, may award and determine compensatory damages and attorney's fees.

¶30. ***McIntosh v. Amacker***, 592 So.2d 525 (Miss. 1991), acts as a guide in revealing proper procedure pursuant to § 11-51-75. In ***McIntosh***, we determined that a landowner failed to bring an appeal from the board of supervisors pursuant to § 11-51-75. We denied McIntosh's appeal. While failing to bring the appeal under the statute, McIntosh did have a claim under § 65-7-67 which provides for damages. Thus, McIntosh should have complied with the bill of exceptions requirement in § 11-51-75. After compliance with § 11-51-75, McIntosh would have been allowed a jury trial under § 65-7-67. Thus, pursuant to § 11-51-75, we could rule on the bill of exceptions and then

remand the case to follow the provisions in § 31-3-21. However, in the case *sub judice*, § 31-3-21 does not provide a remedy for Laws. Rather the remedy must be afforded Laws based on public policy and contract damages.

¶31. Section 31-3-21 is clear and unambiguous. The City violated the statute when opening and considering King's bid. For a legal wrong, there must be a remedy. In support of this contention, Laws cites to Section 24 of Article 3 of the Mississippi Constitution which states:

> All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.

¶32. In *Moore v. Sanders*, 558 So.2d 1383, 1385 (Miss. 1990), we refused to grant an injunctive relief sought in chancery court because proper jurisdiction was in circuit court pursuant to § 11-51-75. We stated that the statute provided a plain, adequate, speedy, and complete remedy for a judicial determination. *Moore*, 558 So.2d at 1385. In order for a complete remedy to be afforded, the continuing unlawful acts by the Board of Supervisors cannot be allowed to circumvent any liability. If there is no remedy, justice certainly will not prevail and the City will be given a means to directly violate the statutory law and suffer no consequences unless the bidder also happens to be a taxpayer of that particular municipality. As stated by this Court in 1891:

> The misconduct of officials should not be permitted to defeat litigants of clear rights accorded them by law, and the circuit court, by virtue of its inherent powers as an appellate tribunal, in proper cases, should exercise its authority in restraining the inferior tribunal, and constraining it to yield obedience to lawful requirement.

*Robinson v. Mhoon*, 68 Miss. 712, 714, 9 So. 887 (1891). Although this case was decided long ago, it still is applicable to the case at bar. As explained by the City, the purpose of Chapter 3 of Title 31 of the Mississippi Code of 1972 can be found in the language of § 31-3-2 which states as follows:

> The purpose of Chapter 3, Title 31, Mississippi Code of 1972, is to protect the health, safety and general welfare of all persons dealing with those who are engaged in the vocation of contracting and to afford such persons an effective and practical protection against incompetent, inexperienced, unlawful and fraudulent acts of contractors.

Miss. Code Ann. §31-3-2 (1990). If meaningful damages are not allowed then the legislative intent of the statutory bidding laws that public contracts are to be awarded on a purely competitive basis cannot be carried out.

¶33. The case of *Canton Farm Equipment, Inc. v. Richardson*, 501 So. 2d 1098 (Miss. 1987) is instructive on the issue of damages. It involved the rejection of a low bid for sale to the county of two backhoes. This Court reversed a motion to dismiss and found that the circuit court had subject matter jurisdiction, and the complaint and amended complaint did state a claim upon which relief could be granted under Miss. Code Ann. §§ 19-13-37 and 31-7-57 but any relief on those claims would be obtained on behalf of Madison County. *Canton Farm Equip.*, 501 So. 2d at 1109. While addressing the issue of standing this Court held that Canton's personal claims are within the pendent jurisdiction of the court. The Court stated, "[t]hat those claims might have been asserted via an

appeal under Section 11-51-75 is beside the point. Because they arise out of a common nucleus of operative fact with the Section 19-13-37/31-7-57 claims, Canton's personal claims may be asserted in this action." *Canton Farm Equip.*, 501 So. 2d at 1109-10. Based on the *Canton* case, Laws, as a bidder, can proceed in circuit court to recover damages for itself based on the Board's violation of the statute because it has standing to prove the violation and any resulting damages it has suffered. *Id*. at 1105-06.

¶34. Laws' brought this action solely under § 11-51-75. The Circuit Court found that the contract was illegally granted to King and this Court is in agreement with this determination. Even under the plain language of the statute, it seems that the circuit court had the authority to "render such judgment as the board or municipal authorities ought to have rendered" by awarding the contract to Laws. By doing so then Laws has a contract claim for breach and contract damages since the City allowed another company to provide the same services that Laws had a legal right to perform. Compensatory damages under the law of contracts are the proper measure of damages for an aggrieved bidder which was entitled to the award of the contract. Therefore, this Court holds that Laws is entitled to damages measured by the law of contracts where a complete and adequate remedy is available, the enforcement of the statutory bid laws are upheld and legislative intent to make sure that public contracts are awarded on a competitive basis and not for any other purpose is reinforced.

¶35. The City contends that it was denied the right to a trial by jury as guaranteed by Section 31 of Article 3 of the Mississippi Constitution which provides:

> The right of trial by jury shall remain inviolate, but the legislature may, by enactment, provide that in all civil suits tried in the circuit and chancery court, nine or more jurors may agree on the verdict and return it as the verdict of the jury.

¶36. The City's jury trial request was denied by the circuit court on the basis that the impaneling of a jury in this cause would be inconsistent with the circuit court's role as an appellate court pursuant to § 11-51-75. The right to trial by jury under the State Constitution is guaranteed only in cases in which, at common law, a jury was required. Where an action involves remedies recognized at common law, it must preserve to parties their right to a jury trial. *Curtis v. Loether*, 415 U.S. 189, 195 (1974). "If the action is properly viewed as one for damages only, our conclusion that this is a legal claim obviously requires a jury trial on demand." *Curtis*, 415 U.S. at 196 n.11. "The Seventh Amendment, for example, entitled the parties to a jury trial in actions for damages to a person or property, for libel and slander, for recovery of land, and for conversion of personal property." *Ross v. Bernhard*, 396 U.S. 531, 533 (1970). However, this Court has held that state courts are not controlled by the Seventh Amendment. *Gulf & S.I.R. Co. v. Hales*, 140 Miss. 829, 105 So. 458, 460-61 (1925); *Wells v. Panola County Bd. of Educ.*, 645 So. 2d 883 (Miss. 1994). Instead this case is controlled by the Mississippi Constitution.

¶37. "The right to jury trial guaranteed by Section 31 applies only to those cases in which a jury trial was necessary at common law." *Wells*, 645 So. 2d at 898. The case sub judice was appealed to the circuit court and the cause of action derives from statutory law as opposed to common law. Like the tort claim under the Accident Contingent Fund Statutes in issue in the *Wells* case, the public bid statutes also did not exist at common law. In addition, the circuit court was sitting as an appellate court in the case at bar pursuant to Miss. Code Ann. §11-51-75. Therefore, this Court finds that the

City of Durant was not entitled to a jury trial in the circuit court.

¶38. In conclusion, the circuit court's interpretation of § 31-3-21 and its award of damages to Laws is affirmed.

¶39. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., McRAE, ROBERTS AND WALLER, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH AND MILLS, JJ.**

**BANKS, JUSTICE, DISSENTING:**

¶40. Laws Construction brought this action by filing a bill of exceptions in the circuit court, which sits as an appellate court from decisions by boards of supervisors or municipal authorities. *See* Miss. Code Ann. § 11-51-75 (1972). The award of damages, however, is predicated solely on a violation of Miss. Code Ann. § 31-3-21 (1990), which comprises part of the state's bid purchase laws. The fundamental issue, therefore, is whether an apparent low bidder who is not awarded a government contract because of a violation of the bid purchase laws by government officials has a private cause of action for damages against the governmental subdivision. Because I am of the view that a low bidder has no such cause of action, I respectfully dissent.

¶41. The majority here bases its decision largely on the rationale that "for a legal wrong, there must be a remedy." Since the City awarded the contract to another bidder and the project had been substantially completed, the circuit court could not "render such judgment as the board or municipal authorities ought to have rendered." *See* Miss. Code Ann. § 11-51-75 (1972). Thus, it is reasoned that damages for the aggrieved low bidder were proper, and that if "meaningful damages are not allowed then the legislative intent of the statutory bidding laws that public contracts are to be awarded on a purely competitive basis cannot be carried out."

¶42. Our central inquiry is whether the legislature intended to create, either expressly or by implication, a private cause of action. *See, e.g., **Touche Ross & Co. v. Redington,** 442 U.S. 560, 575 (1979).* The legislative purpose of the bid purchase laws, herein quoted by the majority, makes clear that these laws were designed for the general welfare of the citizenry and to protect the public from unlawful and fraudulent acts of contractors. Thus, our bid purchase laws are like similar federal and state procurement schemes in that they are designed to provide the public with an economical and efficient system of procurement, and not "for the 'especial' benefit of bidders." ***Northland Equities, Inc. v. Gateway Ctr. Corp.,*** 441 F. Supp. 259, 262 (E.D. Pa. 1977). *See also **State ex rel. Educ. Assessments Sys., Inc. v. Cooperative Educ. Servs. of New Mexico, Inc.,*** 848 P.2d 1123, 1128 (N.M. Ct. App. 1993); ***Ohio River Conversions, Inc. v. City of Owensboro,*** 663 S.W. 2d 759, 760 (Ky. Ct. App. 1984) ("'[c]ompetitive bidding statutes are primarily intended for the benefit of the public rather than for the benefit or enrichment of bidders, and consideration of advantages or disadvantages to bidders must be secondary to the general welfare of the public'") (quoting 72 C.J.S. Supp. *Public Contracts* § 8 (1975)); ***Gulf Oil Corp. v. Clark County,*** 575 P.2d 1332, 1333 (Nev. 1978) ("[t]he purpose of bidding is to secure competition, save public funds, and to guard against

favoritism, improvidence and corruption. Such statutes are deemed to be for the benefit of the taxpayers and not the bidders, and are to be construed for the public good").

¶43. My concern in the present case is that under the guise of promoting the purpose of a statute clearly designed for the general welfare of the public, the public is made to pay for its own victimization. In *Gulf Oil*, the Nevada Supreme Court had before it an action by an unsuccessful public works bidder seeking damages for failure to be awarded a contract. That court stated:

> Although the lowest responsible bidder may have standing to timely challenge the rejection of his bid and to compel the award of the contract to him..., it does not follow that such bidder may recover damages after the project has been completed by the contractor whose bid was accepted. A timely challenge is compatible with the public interest since it serves to force compliance with the purpose of the bidding procedure. After the project is completed, however, it is difficult to perceive how the public interest is served by investing the low bidder with a cause of action for damages. The public already has paid the difference between the lowest bid and the bid which was accepted. The taxpayer should not further be penalized.

*Gulf Oil,* 575 P.2d at 1333-34. *See also City of Scottsdale v. Deem,* 556 P.2d 328, 330 (Ariz. Ct. App. 1976) ("misfeasance of public officials in failing to award the contract to the lowest bidder should not be a source of double vexation to the public"); *M. A. Stephen Constr. Co. v. Borough of Rumson,* 308 A.2d 380, 385 (N.J. Super. Ct. App. Div. 1973).

¶44. In accord with the principle that statutory procurement schemes are enacted primarily for the protection of the public and not for the benefit of individual bidders, the great weight of authority from other jurisdictions holds that procurement statutes and regulations do not confer private causes of action for damages on improperly awarded government contracts. *See, e.g., Tectonics, Inc. of Florida v. Castle Constr. Co.,* 753 F.2d 957 (11th Cir. 1985);*Northland Equities Inc. v. Gateway Ctr. Corp.,* 441 F. Supp. 259 (E.D. Pa. 1977); *State ex. rel. Educ. Assessments Sys., Inc. v. Cooperative Education Servs. of New Mexico,* 848 P.2d 1123 (N.M. Ct. App. 1993); *Sutter Bros. Constr. Co. v. City of Leavenworth,* 708 P.2d 190 (Kan. 1985); *City of Scottsdale v. Deem,* 556 P.2d 328 (Ariz. Ct. App. 1976); *M. A. Stephen Constr. Co., v. Borough of Ramson* 308 A.2d 380 (N.J. Super. Ct. App. Div. 1973). *See also generally* James L. Isham, Annotation, *Public Contracts: Low Bidder's Monetary Relief Against State or Local Agency for Nonaward of Contract,* 65 A.L.R. 4th (1988); Eugene McQuillin, Municipal Corporations § 29.86 (3d ed. rev. 1990).

¶45. The majority here relies on *Canton Farm Equipment, Inc. v. Richardson,* 501 So. 2d 1098 (Miss. 1987) for the proposition that a bidder may proceed in circuit court to recover damages against a governmental entity. The question in that case, however, was whether the plaintiff, an aggrieved low bidder, had standing to bring a claim under our state statutes which prohibit any individual member, officer, or agent of any agency or board of a governing authority to let contracts or purchase commodities in violation of the law. *See* Miss. Code Ann. § 31-7-57 (1990). This Court ruled that the plaintiff had standing.

¶46. Thus, *Canton Farm Equipment* holds that an unsuccessful bidder may bring an action as a private attorney general against individual members of a government entity to seek an order requiring those individuals to repay the governmental entity for the amounts expended on a contract wrongfully awarded to a competitor. Any funds recovered, however, would be on behalf of the

government entity. ***Canton Farm Equip.,*** 501 So. 2d at 1109. The opinion goes on to hold that any personal claims that the plaintiff might have which arise out of a "common nucleus of operative fact" may also be brought in the same suit. ***Id.*** Nothing in ***Canton Farm Equipment***, however, provides for a cause of action for damages by a low bidder against a governmental entity itself.

¶47. I believe that providing a private cause of action for damages against the city by the unsuccessful bidder in the present case is contrary to the legislative purpose of the statutory bid purchase laws and against sound public policy. Accordingly, I dissent.

**SMITH AND MILLS, JJ., JOIN THIS OPINION.**